**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **HAROLD SPILLERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:11-CV-324 (MTT)** |
| | ) | |
| **CRAWFORD COUNTY, GEORGIA,** *et* | ) | |
| *al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

This matter is before the Court on the Defendants' Motions to Dismiss.  (Docs. 8,

9, and 10).  For the reasons set forth below, the Motions are granted in part and denied

in part.

### I.      Factual Background

The following facts, except where specifically noted, are not in dispute.[1]

In 1986, Plaintiff Harold Spillers entered a plea of nolo contendere to a charge of

aggravated assault.  He completed his probated felony sentence in 1991 and has had

no subsequent convictions.  In 2000, Spillers ran for a seat on the Crawford County

Commission.  When qualifying for that election, Spillers executed a Declaration of

---

[1] The facts giving rise to this case were the subject of a prior criminal action in the Superior
Court of Crawford County, Georgia.  For a more complete discussion of that case, see *Spillers
v. State*, 299 Ga. App. 854, 683 S.E. 2d 903 (2009).

Candidacy and Affidavit, which, among other things, required Spillers to swear as follows:

> I have never been convicted and sentenced in any court of competent jurisdiction for fraudulent violation of primary or election laws, malfeasance in office, or felony involving moral turpitude[2] or conviction [sic] of domestic violence under the laws of this State, any other State, or of the United States, or, if so convicted, that my civil rights have been restored; and at least ten years have elapsed from the date of the completion of the sentence without a subsequent conviction of another felony involving moral turpitude.

In light of his 1986 nolo contendere plea, Spillers discussed with Sarah Purvis, who was then the probate judge for Crawford County and the County's chief electoral official, whether he could execute the affidavit.  Purvis, who knew of Spillers' plea, told him that she had contacted the Secretary of State about the matter and that he was qualified to run for office.  Purvis then notarized Spillers' affidavit.

In 2004, Spiller again planned to run for a seat on the Crawford County Commission.[3]  On March 11, 2004, an agent of the Georgia Bureau of Investigation interviewed Spillers by telephone pursuant to a request by Spillers for an investigation into alleged unlawful acts by the then Sheriff of Crawford County, Defendant Kerry Dunaway.  Spillers told the GBI agent that local law enforcement and the District Attorney's office were covering up Sheriff Dunaway's criminal activities.  Spillers claims that Dunaway later threatened to harm him physically and to expose his 1986 conviction to interfere with his upcoming campaign.

---

[2] In Georgia, all felonies are crimes involving moral turpitude.  *Rehberger v. State*, 269 Ga. 576, 502 S.E. 2d 222 (1998).

[3] Spillers' complaint does not state with clarity whether he was elected in 2000.  It can be inferred from the complaint, however, that Spillers won both the 2000 and 2004 elections.

A few weeks later, Spillers executed an affidavit to qualify as a candidate in the Democratic primary.  The form affidavit contained the same language regarding previous convictions as the affidavit Spillers executed in 2000.  Defendant Howard Simms, then District Attorney for Crawford County, charged Spillers with the offense of false swearing in connection with the 2004 affidavit.  Spillers claims that Defendant Simms "brought charges of false swearing … to the grand jury."  (Doc. 1 at ¶ 18). Spillers was indicted by a grand jury on August 18, 2005.[4]  Spillers alleges that Defendant Simms and then Assistant District Attorney Myra Hutchinson, also a named Defendant, knew that the charges were unfounded but brought them anyway in a conspiracy with Dunaway to discredit Spillers' complaints to the GBI.  In August or September 2005, Spillers was arrested pursuant to a warrant and booked into the county jail, where he remained until he made bond.

The trial court, in a bench trial, found Spillers guilty based on his failure to disclose his 1986 conviction.  The conviction was overturned by the Georgia Court of Appeals on August 26, 2009, after the court of appeals concluded that Spillers did not have the requisite criminal intent to support his conviction:

> Although there is evidence that Spillers knew he was a "convicted felon," the evidence is undisputed that Spillers believed that, when he executed the 2004 affidavit, he was swearing only that he was not disqualified from holding public office by reason of a felony conviction-which was

---

[4]  Spillers' indictment was not mentioned in the complaint.  However, a copy of an Executive Order accessible at http://www.georgia.gov/gov/exorders/2005/sep/09_21_05_01.pdf and signed by then Governor of Georgia Sonny Perdue states that Spillers was indicted on August 18, 2005.  A district court may take judicial notice of public records and may consider them on a motion to dismiss without converting the motion to one for summary judgment.  *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53-54 (11th Cir. 2006).

subjectively true and was objectively correct under the applicable law.
Furthermore, there is no evidence that Spillers intended to deceive the
election board or the voters, as he believed that his 1986 conviction was
generally known in the county. For the foregoing reasons, we conclude
that there was no evidence supporting an inference that, in executing the
2004 affidavit, Spillers knowingly and wilfully made a false statement.

*Spillers v. State*, 299 Ga. App. 854, 857, 683 S.E. 2d, 903, 906 (2009).

Spillers filed this lawsuit on August 21, 2011, alleging that the Defendants

violated 42 U.S.C. §§ 1983, 1985, and 1986, and asserting state law claims for false

arrest, malicious prosecution, intentional infliction of emotional distress, and slander.  All

Defendants have moved to dismiss the claims against them.

## II.    Discussion

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain

specific factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are

accepted as true, and the reasonable inferences therefrom are construed in the light

most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261

(11th Cir. 2006).  However, "[w]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'shown'—that the pleader is entitled to relief."  *Id.* at 1950.  "[C]onclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not

prevent dismissal."  *Oxford Asset Mgmt., Ltd. v.* Jaharis, 297 F.3d 1182, 1188 (11th Cir.

2002).  Where there are dispositive issues of law, a court may dismiss a claim

regardless of the alleged facts.  *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

The Court notes that Spillers' complaint is not particularly helpful to him or the Court.  It is essentially a "shotgun pleading," in that it contains numerous counts which incorporate by reference the allegations of preceding counts.  *See Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002).  Spillers makes little effort to allege with particularity the facts establishing that each Defendant is liable for a violation of some federal right.  While shotgun pleading may suffice to state common law tort claims, intricate claims of federal constitutional and statutory violations generally require more precise allegations.

## A.  Eleventh Amendment Immunity

Defendants Simms, Hutchinson, and Dunaway all argue that Spillers' claims against them in their official capacities should be dismissed on Eleventh Amendment grounds.  Spillers did not address the issue of Eleventh Amendment immunity in his response to the Defendants' Motions.

Generally, absent a waiver by the State or a valid congressional override, the Eleventh Amendment bars suits against a State or one of its agencies, departments, or officials when the State is a real party in interest or when monetary recovery would essentially be paid from State funds.  *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997).  Under this principle, federal courts are barred from entertaining suits against state agencies and officials.  *Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1302 (11th Cir. 2005).  In Georgia, district

attorneys, assistant district attorneys, and sheriffs are state officials for Eleventh Amendment purposes. *Abiff v. Slaton*, 806 F. Supp. 993 (N.D. Ga. 1992), *aff'd*, 3 F.3d 443 (11th Cir. 1993) (holding that district attorney and assistant district attorney enjoyed official capacity Eleventh Amendment immunity for actions within the realm of their prosecutorial discretion); *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (holding that Eleventh Amendment immunity can apply to county sheriffs in Georgia while they are performing certain functions).

The State of Georgia has not waived its immunity from suits brought in federal court.  In fact, the Georgia Tort Claims Act specifically preserves the State of Georgia's sovereign immunity from suits brought in federal court.  *See* O.C.G.A. § 50-21-23(b). Nor has Congress abrogated the State's Eleventh Amendment immunity from suits brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  *See Fincher v. State of Fla. Dept. of Labor and Employment Sec. Unemployment Appeals Com'n*, 798 F.2d 1371 (11th Cir. 1986) (affirming dismissal of 42 U.S.C. § 1985 claim on Eleventh Amendment grounds); *see also Alyshah v. Georgia*, 239 Fed. Appx. 473 (11th Cir. 2007) (affirming dismissal of both state law claims and federal law claims brought under 42 U.S.C. §§ 1983 and 1986 on Eleventh Amendment grounds).

Here, Spillers has asserted claims against Defendants Simms, Hutchinson, and Dunaway for their roles in arresting, charging, and prosecuting him for the offense of false swearing in connection with the 2004 affidavit.  The Court concludes that these individual Defendants were state officers and that suit against them in their official capacities is barred by the Eleventh Amendment.  Thus, Spillers' federal law claims

against Defendants Simms, Hutchinson, and Dunaway in their official capacities are dismissed.

## B. Prosecutorial Immunity

Spillers also asserts claims against the individual Defendants in their individual capacities.  Defendants Simms and Hutchinson, who at all times relevant to this action were the District Attorney and Assistant District Attorney for Crawford County, claim they are entitled to prosecutorial immunity.

Generally, the doctrine of absolute prosecutorial immunity protects district attorneys and assistant district attorneys from suits stemming from their roles as advocates for the state.  *Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009).  However, prosecutorial immunity extends only to acts "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Prosecutorial immunity applies to a prosecutor's actions in the initiation and pursuit of criminal prosecution.  *Id.* at 431.  For example, prosecutors enjoy absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate … complaints about the prison system, [and] threatening … further criminal prosecutions."  *Hart*, 587 F.3d at 1295) (internal quotation marks and citation omitted).  Thus, prosecutorial immunity bars malicious prosecution claims.  *Id.* (citation omitted).

Here, Spillers claims that Defendants Simms and Hutchinson "brought charges of false swearing against Mr. Spillers to the grand jury" and prosecuted Spillers "though a

bench trial despite lacking any basis in law and fact for the prosecution."  (Doc. 1 at ¶¶ 18, 49).  Spillers' complaint also contains allegations that the Defendants conspired "to have him removed from office … [and] to discredit him and retaliate against him for making a report to the GBI."  (Doc. 1 at ¶ 18).  However, Spillers does not allege that Defendants Simms and Hutchinson performed any acts outside of the realm for which they would be immune from suit.  Rather, Spiller's allegations against Defendants Simms and Hutchinson involve acts limited to the judicial phase of the criminal process. Accordingly, Defendants Simms and Hutchinson are entitled to prosecutorial immunity, and Spillers' federal law claims against them in their individual capacities under sections 1983, 1985, and 1986 are dismissed.

## C.  42 U.S.C. § 1985

Spillers has also alleged conspiracy claims against the individual Defendants in their individual capacities under 42 U.S.C. § 1985, based on the Defendants' alleged agreement to "seize and incarcerate" Spillers and remove him from office under false pretenses.[5]  (Doc. 1 at ¶ 30).  However, Spillers has alleged neither the subsection of the statute under which he is proceeding nor the facts giving rise to his claim.

Section 1985(1) prohibits conspiracies between "two or more persons … to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof…."  The purpose of section 1985(1) "is to proscribe conspiracies that

_____

[5] In their Motions to Dismiss, the Defendants raise several of the same defenses.  Although the Court has already found that Defendants Simms and Hutchinson are immune from suit, the Court's analysis of Spillers' section 1985 and 1986 claims applies to all Defendants.

interfere with the performance of official duties by *federal officers*."  *Morast v. Lance*,
807 F.2d 926, 929 (11th Cir. 1987) (emphasis added).  Spillers was not a "federal
officer" for purposes of section 1985(1), and as a result, he has failed to state a claim
under section 1985(1).

Section 1985(2) prohibits conspiracies between "two or more persons … to deter,
by force, intimidation, or threat any party or witness in any court of the United States
from attending … or from testifying to any matter pending therein…."  Congress meant
section 1985(2) to protect a party based on his or her physical presence while attending
or testifying in federal court.  *See Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th
Cir. 1981).[6]  Spillers has not alleged any facts relating to his attendance or testimony in
federal court, and he has therefore failed to state a claim under section 1985(2).

Finally, section 1985(3) prohibits conspiracies between "two or more persons …
for the purpose of depriving, either directly or indirectly, any person or class of persons
of the equal protection of the laws, or of equal privileges and immunities under the
laws…."  To state a claim under section 1985(3), a plaintiff must allege: "(1) a
conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or
class of persons of the equal protection of the laws, or of privileges and immunities
under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is
either injured in his person or property and deprived of any right or privilege of a citizen
of the United States."  *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior
to October 1, 1981.

(11th Cir. 1992).  The second element requires proof of a deprivation of rights under a specific statute or constitutional provision and "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.* at 628. The purpose of section 1985(3) is "to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).  Spillers has failed to allege any facts which could conceivably support an inference that he was victim to any class or race-based discrimination.  In fact, nowhere in his complaint does Spillers even claim to be a member of a protected class or race.  Accordingly, he has failed to state a claim under section 1985(3).

In sum, Spillers' complaint fails to state a section 1985 claim against any Defendant.

### D.  42 U.S.C. § 1986

Because a claim under 42 U.S.C. § 1986 is predicated on a successful action under section 1985, Spillers has no viable cause of action under section 1986.  *Morast*, 807 F.3d at 930.

### E.  42 U.S.C. § 1983

The only remaining federal claims over which this Court has original jurisdiction are Spillers' section 1983 claims against Defendant Crawford County and Defendant Dunaway in his individual capacity.  Section 1983 provides a cause of action for "a claimant who can prove that a person acting under color of state law committed an act

that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

To the extent Spillers has asserted a section 1983 claim against Defendant Crawford County, that claim lacks merit. The Supreme Court has placed strict limitations on municipal liability under section 1983. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Id.* Instead, only when the county's "official policy" causes a constitutional violation may a county be held responsible. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Spillers can establish an official policy of Defendant Crawford County by showing either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Id.* at 690-91.

Spillers does not claim that Crawford County has an official policy permitting constitutional violations. Rather, Spillers alleges only that Defendant Crawford County has a "general custom and practice" of "allowing misconduct and corruption to take place within its governing body" and of "allowing retaliation in the form of criminal charges to be levied against someone attempting to expose the corruption within the governing body." (Doc. 1 at ¶ 10). Under this theory, Spillers "(1) must show that [Crawford County] has authority and responsibility over the governmental function at issue and (2) must identify those officials that speak with final policymaking authority for [Crawford County] concerning the act alleged to have caused the particular

constitutional violation in issue."  *Grech*, 335 F.3d at 1330.  "A custom or practice, while

not adopted as an official formal policy, may be so pervasive as to be the functional

equivalent of a formal policy."  *Id.* at 1330 n. 6.  It is generally necessary, however, to

show a persistent and widespread practice.  A single incident of allegedly

unconstitutional conduct is not so pervasive as to be a custom or practice under which

liability may be imposed upon a county.  *Id.*

Here, the sole allegation of a custom or practice in Spillers' complaint is the

conclusory statement in paragraph ten that Crawford County has a policy of "allowing

misconduct."  Spillers does not allege the necessary repeated acts of a final

policymaker of Crawford County.  Such a general and conclusory allegation, without any

factual context regarding the County's knowledge of and indifference towards the

alleged misconduct or the frequency of the alleged misconduct, is insufficient to raise a

right to relief above the speculative level, as is required by the Federal Rules of Civil

Procedure and *Twombly*.  Accordingly, Spillers has failed to allege a section 1983 claim

against Crawford County.

All that remains are Spillers' section 1983 claims against Defendant Dunaway in

his individual capacity.  Defendant Dunaway contends that he is protected from suit in

his individual capacity by qualified immunity.[7]  Qualified immunity protects government

--------

[7] Defendants Simms and Hutchinson also claim that they are protected from suit in in their
individual capacities by qualified immunity.  However, because the claims against them in their
individual capacities are barred by absolute prosecutorial immunity, the Court's qualified
immunity analysis will apply only to Defendant Dunaway.  Notably, Spillers did not respond to
Defendant Dunaway's claim that he is entitled to qualified immunity, choosing only to state that
qualified immunity does not protect Defendants Simms and Hutchinson.

officials sued in their individual capacities so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It is appropriate to grant the defense of qualified immunity at the motion to dismiss stage if Spillers has failed to state a violation of a clearly established constitutional right.  *Gonzales v. Reno*, 325 F.3d 1228, 1235-36 (11th Cir. 2003).

A threshold determination in a qualified immunity analysis is whether the official was acting within the scope of his discretionary authority when the alleged constitutional violation occurred.  *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).  In making this determination, the relevant consideration is whether the acts of the official were "of a type that fell within the employee's job responsibilities."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  Here, Spillers' claims arise out of his arrest and subsequent prosecution for false swearing in connection with the 2004 affidavit.  Because making an arrest is within Defendant Dunaway's official responsibilities, he was performing a discretionary function when he arrested Spillers. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity.  After a defendant has established that he was performing a discretionary function, the burden shifts to the plaintiff to demonstrate both (1) that a constitutional violation occurred and (2) that the constitutional right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although Spillers does not allege which of Defendant Dunaway's specific actions constitute constitutional violations, his complaint contains vague and conclusory allegations that the "Defendants," as a group, violated the Fourth, Eighth, and Fourteenth Amendments.[8]   The Court will address each alleged constitutional violation in turn.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Spillers claims that he was arrested "without probable cause" and "booked into the jail and forced to stay incarcerated until he made bond."  (Doc. 1 at ¶¶ 18, 38).  Importantly, however, Spillers acknowledges that he was arrested pursuant to an arrest warrant.  (Doc. 1 at ¶ 40).  When a Fourth Amendment claim is based on a seizure that involves an arrest warrant or is otherwise pursuant to legal process, the claim should be analyzed as a section 1983 malicious prosecution claim rather than a

---

[8] In his response to the Defendants' Motions to Dismiss, which, as noted, fails to address many of the Defendants' arguments, Spillers asserts that the Defendants' conduct amounts to a "clear violation of [Spillers'] First Amendment Constitutional Rights."  (Doc. 12 at 5).  However, claims asserted for the first time in response to a motion to dismiss may be disregarded, especially when a party is represented by counsel.  *See Alford v. Consolidated Government of Columbus, Ga.*, 2011 WL 3684528 (11th Cir. Aug. 23, 2011) (holding that the district court did not err in limiting its consideration of the plaintiff's claims to the specific grounds raised in his complaint); *see also Kalpak v. EMC Mortg. Corp.*, 2011 WL 2711182 at *4 (M.D. Ga. July 13, 2011).  Even if Spillers had properly asserted a First Amendment retaliatory arrest or prosecution claim, that claim would fail for the same reason as his Fourth Amendment malicious prosecution claim. *See Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) (holding that the existence of probable cause defeats a First Amendment claim).

section 1983 false arrest claim.  *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996);

*Kelly v. Curtis*, 21 F.3d 1544, 1553-54 (11th Cir. 1994) (treating an allegation that

detectives should have known the affidavit for an arrest warrant failed to establish

probable cause as a malicious prosecution claim).  The Eleventh Circuit has held

malicious prosecution to be a viable constitutional tort recognizable under section 1983.

*Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998).

      To state a claim for federal malicious prosecution under section 1983, a plaintiff

must prove (1) the elements of the common law tort of malicious prosecution, and (2) a

violation of his Fourth Amendment right to be free from unreasonable seizures.  *Wood*

*v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  Under Georgia law, the elements of

malicious prosecution are "(1) the prosecution was instituted maliciously, (2) without

probable cause, and (3) has terminated favorably to the plaintiff."  *Condon v. Vickery*,

270 Ga. App. 322, 324, 606 S.E. 2d 336, 339 (2004); *see also* O.C.G.A. § 51-7-40.

Generally, and this case is no different, the gravamen of a claim for malicious

prosecution is the absence of probable cause on the part of the person instituting the

prosecution.[9]  *McKissick v. S.O.A., Inc.*, 299 Ga. App. 772, 774, 684 S.E. 2d 24, 27

(2009).

---

[9] There is also some question as to whether Defendant Dunaway is the proper party to Spillers'
malicious prosecution claim, considering Spillers' allegations that Defendant Simms brought the
charges to the grand jury and prosecuted the criminal action. (*See* Doc. 1 at ¶ 18; Doc. 12 at 7).
However, because Defendant Dunaway allegedly effectuated Spillers' arrest and because of
Spillers' consistent use of the plural "Defendants" throughout his complaint, the Court will
analyze the claim as though it was properly alleged against Defendant Dunaway.

Throughout his complaint, Spillers repeatedly alleges that the he was arrested without probable cause, charged, prosecuted, and convicted of false swearing in connection with the 2004 affidavit.  (Doc. 1 at ¶¶ 16, 18, 22, 25, 28, 30, 32, 38, 40, 46).  Spillers claims the Defendants were motivated by malice, personal spite, and ill will, and that "even a cursory examination of the case would have led Defendants Hutchinson and Simms to see that probable cause did not exist."  (Doc. 1 at ¶ 38; Doc. 12 at 7).

However, the general rule in Georgia is that, absent evidence of fraud, perjury, or other subornation, "a judgment of conviction in the criminal prosecution … although subsequently reversed by an appellate tribunal, is conclusive evidence of probable cause for the prosecution." *Condon*, 270 Ga. App. at 324, 606 S.E. 2d at 339.  Because the gravamen of an action for malicious prosecution is a lack of probable cause, "there can be no recovery by the plaintiff where there was any probable cause for the prosecution, even though it may appear that the prosecutor was actuated by improper motives."  *Id.* (citing *Davis v. Gilbert*, 67 Ga. App. 277, 278, 19 S.E. 2d 920 (1942)).

Moreover, Spillers admits in his complaint that the Defendants brought charges of false swearing to the grand jury (which returned an indictment) and that his arrest was made pursuant to an arrest warrant.  "[I]t has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue."  *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977).  In situations in which the "facts supporting an arrest warrant are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain and insulates the initiating party."  *Id.* at

-16-

1193; *see also Barts v. Joyner*, 865 F.2d 1187 (11th Cir. 1989) (concluding that the independent decisions of prosecutors, juries, and judges to prosecute, indict, convict, and sentence break the chain of causation for damages that might relate to the original unlawful seizure).

In light of his indictment, arrest pursuant to a warrant, and conviction, Spillers' conclusory allegations that he was arrested without probable cause and that the prosecution continued through a bench trial despite lacking any basis in law and fact are not sufficient to state a claim for malicious prosecution.  Spillers has alleged no facts suggesting that the indictment, the warrant supporting his arrest, or his conviction in Crawford County Superior Court were obtained by fraud, perjury, subornation, or any other improper means.  Although he points to the Georgia Court of Appeals' reversal of his conviction as conclusive evidence that there was no probable cause, that court found that the Government had failed to prove that Spillers had the requisite criminal intent to support his conviction.  *See Spillers*, 299 Ga. App. at 854, 683 S.E. 2d at 904. The court of appeals made no mention of any improprieties that led to Spillers' conviction other than the evidence simply not supporting the verdict.

Accordingly, because Spillers' indictment, arrest pursuant to a warrant, and conviction establish probable cause, and because his complaint is devoid of allegations that either the indictment, warrant, or judgment in Crawford County Superior Court was obtained by fraud, he has failed to adequately plead a Fourth Amendment malicious prosecution cause of action, and Defendant Dunaway is entitled to qualified immunity on Spillers' section 1983 Fourth Amendment claim.

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment has traditionally protected the rights of prisoners to receive reasonably adequate care while in custody of the state.  *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).  Upon review of Spillers' complaint, the Court is unable to discern what facts he alleges amount to a violation of his Eighth Amendment rights.  Conclusory allegations that the Defendants violated his Eighth Amendment rights, without any factual support, will not suffice.  As a result, Defendant Dunaway is entitled to qualified immunity, and Spillers' section 1983 Eighth Amendment claim is dismissed.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law…."  U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment provides two different kinds of constitutional protection: procedural due process and substantive due process.  "A violation of either of these kinds of protection may form the basis of a suit under section 1983." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).  Even after being put on notice by the Defendants' motions that his complaint does not state whether he is asserting a procedural or substantive due process violation, Spillers failed to cure this deficiency in his response.

Throughout his complaint, Spillers repeatedly contends that "he was removed from office [as a Crawford County Commissioner] by the Governor's Office" on baseless charges.  (Doc. 1 at ¶¶ 31, 50, 56).  In his response to the Defendants' motions, Spillers

claims that he "was deprived his [sic] property interest as Commissioner and his liberty interest without due process of law in violation of the 14th Amendment."  (Doc. 12 at 5). Later in his response Spillers states that the Defendants "deprived and injured [him] by unreasonable government interference with his right to hold office and pursue his chosen profession" and that his reputation "suffered because it was alleged that he lied to obtain the right to run for commissioner in 2000."  (Doc. 12 at 7).  Because it is possible that Spillers intended to assert both procedural and substantive due process violations, the Court will analyze his claim under both theories.

A section 1983 claim alleging a denial of procedural due process requires proof of three elements: "a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."  *Lawyer Doe v. Florida Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011).  In the employment context, the crux of a procedural due process claim is that an employee was not given a meaningful opportunity to be fairly heard prior to his suspension or termination.  For it is "only when the state refuses to provide a process sufficient to remedy the procedural violation" that a constitutional violation actionable under section 1983 arises.  *McKinney*, 20 F.3d at 1557.

Here, even assuming that Spillers has properly alleged that he was deprived of a protected property or liberty interest in his continued employment or in his good reputation, Spillers' complaint and response are wholly devoid of any allegations that the state failed or refused to provide a process sufficient to remedy the procedural violation or that those remedies were inadequate.  *See Dingle v. City of Coleman*, 2010

WL 4366886 (M.D. Fla. Oct. 28, 2010) ("The inability of the Plaintiff to allege that the State of Florida has refused to make available a means through which to remedy his alleged deprivation is fatal to his procedural due process claim.").  Accordingly, to the extent Spillers' section 1983 Fourteenth Amendment claim is based on a denial of procedural due process, he has failed to state a claim upon which relief may be granted, and that claim is dismissed.

    "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556 (quotation marks and citation omitted).  Fundamental rights are those which arise out of the Constitution, such as the rights enumerated in the Bill of Rights and certain unenumerated rights such as the penumbral right to privacy.  *Id.*  It is unclear what rights Spillers claims are entitled to substantive due process protection. Because he only mentions the Fourteenth Amendment in connection with his removal from office as a Crawford County Commissioner, the Court will analyze his claim in that context.

    Construing Spillers' claim to involve his termination from the County Commission, this claim is governed squarely by the Eleventh Circuit's decision in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994).  In *McKinney*, a county employee alleged that various charges were brought against him pretextually and that his termination violated his constitutional rights and denied him substantive due process.  *Id.* at 1555.  The Eleventh Circuit stated that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due

-20-

process protection … because substantive due process rights are created only by the Constitution." *Id.* at 1556.  In dismissing the county employee's substantive due process claim, the Eleventh Circuit held that "only procedural due process claims are available to pretextually terminated employees."  *Id.* at 1560.

Accordingly, because Spillers has failed to allege either a procedural or substantive due process violation, Defendant Dunaway is entitled to qualified immunity on Spillers section 1983 Fourteenth Amendment claim.

## F.  State Law Claims

Because the Court has dismissed all federal claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Spillers' state law claims.  28 U.S.C. § 1367(c).  All of Spillers' claims pursuant to Georgia law will accordingly be dismissed without prejudice.

### III.    Conclusion

For the reasons set forth above, the Defendants' Motions to Dismiss are **granted in part and denied in part**.  Spillers' federal law claims against all Defendants are **dismissed with prejudice**.  Spillers' claims under Georgia state law are **dismissed without prejudice**.


**SO ORDERED,** this 28th day of November, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

-21-